IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| E3 BIOFUELS-MEAD, LLC,<br><br>　　　　　Plaintiff(s),<br><br>　　v.<br><br>SKINNER TANK COMPANY;<br><br>　　　　　Defendant/Third-Party Plaintiff,<br><br>　　v.<br><br>DILLING MECHANICAL CONTRACTORS, INC.<br><br>　　　　　Third-Party Defendant. | 8:06CV706<br><br><br><br>**MEMORANDUM AND ORDER** |

　　　　This matter is before the court on a motion for partial summary judgment filed by defendant/third-party plaintiff Skinner Tank Company ("Skinner"), Filing No. 162.  This is an action for breach of contract, fraud, and gross negligence in connection with an ethanol plant construction project in Mead, Nebraska.[1]  The plaintiffs, E Biofuels-Mead, LLC and E3 Biofuels-Mead, LLC (hereinafter, collectively, "E3"), entered into a contract with defendant Skinner for the purchase, design, fabrication, construction and installation of several tanks to be used in an Integrated Solid Waste and Bio-Fuels Facility (the "Project") that retrieves usable energy from cattle waste.  Jurisdiction is premised on 28 U.S.C. § 1332, diversity of citizenship.

---

[1] The action also involves a counterclaim against E3 and third-party claim against Dilling Construction, the management firm hired by E3 for the project, for tortious interference with a contract, negligence, indemnification and contribution.

Skinner moves for a summary judgment of dismissal on the plaintiff's claims of fraud and gross negligence, asserting that those claims are barred under the economic loss doctrine. Further, it argues that E3 has failed to plead fraud with particularity under Fed. R. Civ. P. 9(b). It also contends that the plaintiff's demand for damages including a twenty-five percent markup under Section 27 of the contracts at issue should be invalidated as an unenforceable penalty under Nebraska law.[2]

**I. FACTS**

In its First Amended Complaint, E3 alleges it entered into a design contract and a contract for the purchase of fourteen tanks for a total payment of over $2 million.[3] Amended Complaint, Filing No. 99 at ECF p.4. The purchase contract specified that "All welding of tanks will be approved and inspected on site by Certified Weld Examiner, provided by Owner." *Id.* It alleges that the initial designs of certain tanks proved to be mechanically deficient and correction of the design defects required extensive deviations from the original designs, greatly increasing construction expense and delayed the completion of Skinner's work and that of other contractors. *Id.* at 5. E3 alleges that welding on the tanks was also grossly defective. *Id.* at 5. It alleges Skinner's failure to timely complete the work caused E3 to incur damages as a result of the delay, including additional construction costs and expenses, replacement costs,

---

[2] Skinner also contended that there is no statutory basis for an award of attorney fees under Nebraska law. E3 concedes that point and has withdrawn its claim for attorney fees. Accordingly, Skinner's motion to dismiss with respect to attorney fees is moot.

[3] Five of the tanks were shop fabricated, and the remaining nine tanks were to be field erected "on site" at the Project in Mead, Nebraska, from prepared materials supplied by Skinner Tank's manufacturing facility. *Id.* A fifteenth shop fabricated tank was added by purchase order revision on October 3, 2005, but subsequently removed by change order on May 12, 2006. *Id.*

2

repair expenses, operating expenses and overhead, interest expenses on borrowed money, and loss of operating revenue. *Id.* at 9.

Specifically, it alleges Skinner breached the Design and Purchase Contracts by "failing to properly design and assemble the tanks and supporting structures and to deliver in a timely fashion tanks which meet the specifications and express and implied warranties of the contracts." *Id.* E3 also claims fraud in that Skinner "represented to [E3] that it would provide a qualified engineer to fulfill its on-site quality control obligation, that it would provide tradesmen who were qualified and competent to complete the work and that its engineer was capable of inspecting the work of its welders and certifying them qualified for the job without outside oversight," but those representations were false and fraudulent in that unskilled workers were used and no certification was provided. *Id.* E3 also alleges Skinner was grossly negligent and failed to live up to its duties as engineers and craftsmen. *Id.* at 11.

Section 27.0 of each of the contracts between E3 and Skinner provides as follows:

> If Supplier by its action or inaction indicates that it is unable or unwilling to proceed with the Work in a reasonable time, Purchaser may, upon five calendar days after written notice to Supplier, accomplish the Work in question by the most expeditious means available and backcharge Supplier for the costs incurred, plus twenty-five percent markup and overhead.

Filing No. 1, Complaint, Ex. A, Purchase Order #0018  (Filing No. 1-1 at ECF p. 4); *id.*, Ex. B, Purchase Order (Filing No. 1-2 at ECF p. 4).

Skinner denies the plaintiff's allegations, asserts a counterclaim for breach of contract and asserts defenses of failure to state a claim, lack of subject matter jurisdiction, intervening cause, contributory negligence, unclean hands, *in pari delicto*,

mitigation of damages, unforeseeability, breach of contract and breach of covenant of good faith and fair dealing, estoppel and waiver, release, consent/ratification, economic loss doctrine, and champerty.  Filing No. 107.

## II.  LAW

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The movant 'bears the initial responsibility of informing the district court of the basis for its motion, and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'"  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042, (8th Cir. 2011) (en banc) (quoting *Celotex*, 477 U.S. at 323).  If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'"  *Id.* (quoting *Celotex*, 477 U.S. at 324).  A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  If

4

"reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Id.* at 251.

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004).

Under Nebraska law, "the character of an action as one in tort or on contract is determined by the nature of the grievance, not by the form of the pleadings, with consideration being given to the facts which constitute the cause of action." *Henriksen v. Gleason*, 263 Neb. 840, 846, 643 N.W.2d 652, 657 (Neb. 2002). To determine whether an action is based on a contract or a tort, a court must examine and construe a petition's essential and factual allegations by which the plaintiff requests relief, rather than the legal terminology utilized in the petition or the form of a pleading. *Id.* Contract actions, which arise from a breach of a duty imposed on one by an agreement, protect a plaintiff's interest in or right to performance of another's promises; whereas, tort actions, which arise from a breach of a duty imposed by law, protect a plaintiff's interest or right to be free from another's conduct which causes damage or loss to the plaintiff's person or property. *Id.*

In order to recover in an action for breach of contract, the plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with any

5

conditions precedent that activate the defendant's duty. *Henriksen*, 643 N.W.2d at 657. In order to prove a breach of a service contract, the plaintiff must show that the defendant failed to exercise the skill and knowledge normally possessed by members of that trade in good standing in similar communities. *Id.* A plaintiff may maintain an action for professional negligence against an *a*rchitect or engineer. *See Board of Regents v. Wilscam Mullins Birge,* 433 N.W.2d 478, 483 (Neb. 1988);

One may sue in tort when there has been negligence in the performance of a contract. *Lincoln Grain, Inc. v. Coopers & Lybrand,* 345 N.W.2d 300, 305 (Neb. 1984). The injury in such a case results not from a breach of the contract but from negligence in the performance of it, for accompanying every contract is a common-law duty to perform with care, skill, reasonable expediency, and faithfulness the thing agreed to be done. *Id.* A negligent failure to observe any of these conditions is a tort as well as a breach of contract. *Id.*

The economic loss doctrine is a "judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Lesiak v. Cent. Valley Ag. Co-op., Inc.*, 808 N.W.2d 67, 80 (Neb. 2012). The doctrine serves to "'weed[] out cases involving nothing more than an allegedly negligent failure to perform a purely contractual duty—a duty that would not otherwise exist.'" *Id.* The economic loss doctrine precludes tort remedies only where the damages caused were limited to economic losses and where either: (1) a defective product caused the damage or (2) the duty which was allegedly breached arose solely from the contractual relationship between the parties. *Id.* at 81. Economic losses are defined as commercial losses, unaccompanied by personal injury or other property

damage. *Id.* Where only economic loss is suffered and the alleged breach is of only a contractual duty, then the action should be in contract rather than in tort. *Id.* at 83 (affirming the continued validity of the doctrine in the context of products liability).

The doctrine, however, does not bar tort theories in cases wherein either: (1) the damages alleged are not solely economic losses; or (2) there exists an independent tort duty alleged to be breached that is separate and distinct from the contractual duty. *Id.* at 83, nn. 51 & 52. The economic loss doctrine does not apply to bar claims that a party's negligent conduct caused damages to property other than the property that was sold pursuant to the contract. *Id.* at 83; *see also Thomas v. Countryside of Hastings*, 524 N.W.2d 311, 313 (Neb. 1994) (negligent installation of furnace damaged home and caused carbon monoxide injuries to residents); *Getzschman v. Miller Chem. Co.*, 443 N.W.2d 260, 270 (Neb. 1989) (action for professional negligence of an architect); *Schuster v. Baumfalk*, 429 N.W.2d 339, 346 (1988) (negligent repair of farm equipment damaged other buildings and equipment); *Lincoln Grain,* 345 N.W.2d at 304-05 (action for professional negligence); *Driekosen v. Black, Sivalls & Bryson*, 64 N.W.2d 88, 92 (Neb. 1954) (negligent installation of propane system resulted in destruction of residence).

It is well established that both fraudulent misrepresentation and negligent misrepresentation are tort causes of action. *Zawaideh v. Nebraska Dept. of Health and Human Servs. Regulation and Licensure,* 825 N.W.2d 204, 212 (Neb. 2013); *see* Restatement (Second) of Torts §§ 525 and 552 (1977). Importantly, none of the

7

elements of a fraudulent or negligent misrepresentation claim "require an underlying contract."[4]  *Id.*  The Nebraska Supreme Court explains:

> Although contracts are often the end result of the plaintiff's reliance on the defendant's misrepresentation, the true legal dispute for a misrepresentation cause of action is the tortious actions of the defendant. We have stated that where a contractual relationship exists between persons and at the same time a duty is imposed by or arises out of the circumstances surrounding or attending the transaction, the breach of the duty is a tort.  In such case, the tortious act, and not a breach of the contract, is the gravamen of the action; the contract is the mere inducement creating the state of things which furnishes the occasion for the tort.  Thus, we have held that fraud and deceit provide a ground for recovery that is independent of contract.

*Id.* at 212-13.

Under the Federal Rules, a party alleging fraud must state with particularity the circumstances constituting fraud.  Fed. R. Civ. P. 9(b).  The rule is interpreted in harmony with the principles of notice pleading, and to satisfy it, the complaint must allege such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.  *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (quoting *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002)).  Essentially, the complaint must plead the who, what, where, when, and how of the alleged fraud.  *Drobnak*, 561 F.3d at 783 (quoting *United States ex rel. Joshi v. St. Luke's Hosp.*, 441 F.3d 552, 556 (8th Cir. 2006)).  Because this higher degree of notice is intended to enable the defendant to respond specifically and quickly to potentially

---

[4] To state a claim for fraudulent misrepresentation, a plaintiff must allege (1) that a representation was made; (2) that the representation was false; (3) that when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) that the representation was made with the intention that the plaintiff should rely on it; (5) that the plaintiff did so rely on it; and (6) that the plaintiff suffered damage as a result.  *Zawaideh*, 825 N.W.2d at 212.  Negligent misrepresentation has essentially the same elements as fraudulent misrepresentation with the exception of the defendant's mental state.  *Id.*

damaging allegations, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule. *Drobnak*, 561 F.3d at 783. Allegations pleaded on information and belief usually do not meet Rule 9(b)'s particularity requirement, except when the facts constituting the fraud are peculiarly within the opposing party's knowledge. *Id.* at 783-84 (stating that the rule is satisfied if the allegations are accompanied by a statement of facts on which the belief is founded).

Generally, the question of whether a sum mentioned in a contract is to be considered as liquidated damages or as a penalty is a question of law, dependent on the construction of the contract by the court. *Berens and Tate, P.C. v. Iron Mountain Information Management, Inc.*, 747 N.W.2d 383, 387 (Neb. 2008). Under Nebraska law, a stipulated sum is for liquidated damages only: (1) where the damages which the parties might reasonably anticipate are difficult to ascertain because of their indefiniteness or uncertainty; and (2) where the amount stipulated is either a reasonable estimate of the damages which would probably be caused by a breach or is reasonably proportionate to the damages which have actually been caused by the breach. *Id.*; *Growney v. CMH Real Estate Co.*, 238 N.W.2d 240, 242-43 (1976). The focus on liquidated damages versus penalty only arises when the contractual provision seeks to determine, in advance, the measure of damages resulting from a party's breach or nonperformance of the contract. *Berens and Tate, P.C.*, 747 N.W.2d at 388.

### III. DISCUSSION

The court finds that the economic loss doctrine has no applicability to the present case. This case involves claims that a party's negligent conduct caused damages to property other than the property that was the subject of the contract. The plaintiff seeks

9

consequential damages as a result of the delays allegedly caused by the defendant's wrongful conduct. Also, this case involves alleged breach of services and design contracts. It is not a products liability action. There are duties imposed on architects and tradesmen that are independent of the contract. The court finds the defendant's motion for a summary judgment on the plaintiff's negligence claim should be denied.

Further, the court finds that, under the circumstances of this case, the plaintiff alleges fraud with sufficiently particularity. The allegations are more than conclusory. The alleged misrepresentations are specifically set forth and essentially the "who, what, where, when, and how" of the alleged fraud is provided—the plaintiff alleges that the defendant made misrepresentations, in the contract and otherwise, with respect to the skills of its welders and inspectors. The amended complaint adequately enabled the defendant to respond to the allegations.

Also, the court finds that the defendant has not shown as a matter of law that Section 27 of the contracts is an unenforceable penalty, rather than a valid liquidated damages provision. Depending on the evidence, the plaintiff may be able to show that damages of this type were difficult to estimate at the time the contract was negotiated and that a 25% charge is a reasonable and fair attempt to compensate for the loss occasioned by the alleged breach. It appears that the plaintiff would have incurred some overhead, supervision, interest expense and administrative costs whether or not the defendant fulfilled its duties under the contracts. Those expenses could be difficult to quantify and it is reasonable that the parties could have agreed to a percentage markup to compensate for those costs. Whether or not the markup can be recovered as a remedy for the delay will depend on the evidence at trial on the nature of the

contracting parties, the negotiations, the extent of delay, and the proof of and proportionality to actual damages. Accordingly, the court finds Skinner's motion for summary judgment precluding liquidated damages should be denied at this time.

IT IS ORDERED that the defendant's motion for partial summary judgment (Filing No. 162) is denied.

Dated this 30th day of January, 2014.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge
